IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUSTIN HINZO,

    Plaintiff,

v.                                                                                                                                CIV 14-1083 MV/KBM

NEW MEXICO CORRECTIONS DEPARTMENT,
*et al*.,

    Defendants.

# ORDER GRANTING MOTION TO COMPEL REGARDING REQUEST FOR INSPECTION

THIS MATTER comes before the Court on Plaintiff's Motion to Compel Regarding Request for Inspection (*Doc. 89*), which was filed May 4, 2016. Plaintiff asks the Court to compel Defendants to permit a two-day inspection of the Penitentiary of New Mexico – North ("PNM-North") by his prison procedures expert, Shannon McReynolds. Defendants object to aspects of the proposed inspection, including the interviews that Mr. McReynolds wants to conduct of employees and inmates and photographs that he wishes to take of the institution's clothing issue records. The Court, having considered the expedited briefing, the exhibits and relevant law, and being otherwise fully informed, finds that the motion should be granted.

**I.    FACTUAL BACKGROUND**

In his First Amended Complaint, Plaintiff alleges violations of the Eighth and Fourteenth Amendments as well as state tort law claims arising from the more than eight years that he spent in administrative segregation (i.e. solitary

confinement) at PNM-North. *Doc. 84*. At the time Plaintiff filed his initial complaint, he was represented by attorney Jason Flores-Williams. *See Doc. 1*. Because Plaintiff was represented by counsel at that time, the Court followed its typical pretrial-management procedures and issued a Scheduling Order on March 12, 2015, giving the parties until September 14, 2015, to complete discovery. *Doc. 18*. Halfway through the discovery period, Mr. Flores-Williams withdrew, leaving Plaintiff *pro se*. *Doc. 27*. Then, on October 20, 2015, Defendants filed a Motion for Summary Judgment, alleging that Plaintiff's claims were barred by the applicable statute of limitations under New Mexico law. *Doc. 59*. This led the Court to stay discovery pending resolution of that motion by the presiding judge. *Doc. 63*. Noting that *Martinez* Reports are often proper and necessary for an orderly consideration of the issues in cases prosecuted by *pro se* inmates, the Court explained that if Plaintiff's claims survived Defendants' summary judgment motion, the Court would require Defendants to file a *Martinez* Report in order to develop a record sufficient for the presiding judge to ascertain whether there were factual or legal bases for Plaintiff's claims. *Doc. 63* at 7.

    The Court denied Defendants' Motion for Summary Judgment on January 27, 2016, and referred the case to the District's *pro bono* committee comprised of attorneys who consider assuming the representation of parties' in referred cases on a *pro bono* basis. *Doc. 68*. By February 22, 2016, none of the committee members had agreed to undertake Plaintiff's representation, and the Court entered its Order for *Martinez* Report. *Doc. 71*. Then, a month later, well before Defendants' deadline for the filing of the *Martinez* Report, attorneys George Bach

and Matthew Garcia entered their appearance on behalf of Plaintiff in this case. *Doc. 73*.

At a status conference held on April 1, 2016, the Court indicated that it would vacate its Order for a *Martinez* Report, given Plaintiff's representation by counsel, and directed counsel to confer and submit to the Court a proposed Scheduling Order to include a proposed discovery plan and pretrial deadlines. *Doc. 75*. The parties submitted their proposed Amended Scheduling Order on April 8, 2016, which the Court approved and entered that same day. *See Doc. 78*. The Amended Scheduling Order re-opened discovery on a limited basis until August 2, 2016, and allowed the parties to conduct written discovery, including 25 interrogatories, 25 requests for production, and 15 requests for admission, to take six depositions each, and to disclose expert witnesses by specified dates. *Id*. After discovery was underway, the subject dispute arose. The Court ordered formal, expedited briefing, which is now before the Court.

## II.    STANDARD OF REVIEW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In assessing proportionality, courts must consider the following factors:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id*. Information need not be admissible to be discoverable. *Id*.

3

Under Federal Rule of Evidence 702, a witness qualified as an expert may testify in the form of an opinion or otherwise if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) The testimony is based on sufficient facts or data;
(c) The testimony is the product or reliable principles and methods; and
(d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

## III.   ANALYSIS

Plaintiff's prison procedures expert, Shannon McReynolds, proposes to conduct a two-day site inspection of PNM-North, which would include interviews of staff and inmates of approximately 15 minutes in duration, as well as the taking of photographs of clothing issue records. Defendants object to these specific aspects of Mr. McReynolds' proposed inspection. More broadly, though, they object to what they characterize as Plaintiff's attempt to "move the goalposts" with respect to discovery in this case. *Doc. 93* at 1. Although they concede that they agreed to the proposed Amended Scheduling Order submitted by the parties and ultimately entered by the Court, they submit that Plaintiff had "ample opportunity to conduct discovery" prior to the close of discovery in September 14, 2015, and yet "failed to timely request or schedule any depositions before the close of discovery." *Doc. 93* at 1-2.

In the Court's view, Defendants' characterization of Plaintiff's failure to conduct discovery is overstated. Plaintiff's failure to conduct discovery prior to September 14, 2015, was more likely a product of the unique circumstances of

the case, rather than of his dilatoriness. As the Court has previously explained, (*see Doc. 63*), Plaintiff's initial representation by counsel caused the Court not to order a *Martinez* report, as is typically necessary in *pro se* inmate cases. But the subsequent withdrawal of Plaintiff's counsel during the discovery period and Defendants' filing of a Motion for Summary Judgment altered the Court's approach to pretrial management and effectively halted discovery. Yet even before discovery was stayed, while proceeding *pro se*, Plaintiff made some effort to conduct discovery, albeit not entirely consistent with the Federal Rules of Civil Procedure. For instance, on August 24, 2015, Plaintiff filed a "Request for Depositions" in which he asked the Court to order Defendants "to schedule and make available for deposition" fifteen named individuals, explaining that his *pro se* status made it difficult for him to take the necessary depositions. *Doc. 42* at 1.  The Court denied Plaintiff's request in anticipation of ordering a *Martinez* Report. *Doc. 63.* Under these circumstances, Plaintiff's failure to conduct depositions or other discovery prior to the initial discovery deadline does not weigh in favor of denying Plaintiff's Motion to Compel.

### A.  Interviews of Staff and Inmates

With respect to Mr. McReynolds' proposed interviews of staff and inmates, Plaintiff insists that these interviews are necessary for him to obtain the facts required to formulate opinions that will assist the trier of fact. *Doc. 89* at 4. To be sure, an expert opinion must be based upon a sufficient factual basis and avoid speculation. *See* Fed. R. Evid. 702. Here, Mr. McReynolds seeks to gather factual information through the proposed interviews in order to "assess the

culture of the institution." *Doc. 89*, Ex. 8 (e-mail correspondence between counsel containing McReynolds' explanation of the purpose of his proposed interviews).

In addition to being relevant to his claims, Plaintiff contends that the requested interviews are also proportional to the needs of this case. Applying the factors enumerated in Federal Rule of Civil Procedure 26(b)(1), Plaintiff maintains that the issues at stake in the action involve "nothing less than the dignity of man," that the amount in controversy from prolonged segregation has the potential to be extremely significant, that the parties' respective access to the inmates and officers weighs in favor of the requested discovery, that the New Mexico Department of Corrections ("NMDOC") is regularly subject to inspections far more intrusive and costly than those proposed by Mr. McReynolds, and, finally, that the inspection and interviews are "paramount" to Plaintiff's claims. *Doc. 89* at 8.

Defendants do not take issue with Plaintiff's proportionality assessment. Rather, they contend that Mr. McReynolds' proposed interviews constitute *de facto* depositions, which subvert the rules of discovery and the protections provided therein. *Doc. 93* at 3-4. More particularly, they maintain that important characteristics of formal depositions are absent from the proposed interviews, including reasonable notice to the deponents, representation by legal counsel, the ability to make question-specific objections to form, foundation, and relevance, and the option of filing motions for protective orders or motions to quash. *Doc. 93* at 3-4. Defendants also worry that Mr. McReynolds may

6

improvisationally ask foundational questions to the interviewees beyond those provided in his proposal and assert that certain of his proposed questions are objectionable because they are vague, compound, and assume facts not in evidence. *Id.* at 5. Defendants further object on the basis that the agents and employees Mr. McReynolds proposes to interview are the "target of the allegations in Plaintiff's amended complaint and are represented parties." *Doc. 93* at 7. Defendants suggest that both the yet-unidentified managerial and non-managerial employees are represented parties who are entitled to attorney presence at an interview and should not be subjected to *ex parte* communication by an agent of Plaintiff. *Id.* at 8.

Plaintiff maintains that Defendants misconstrue the nature of Mr. McReynolds' interviews. *Doc. 95* at 1. He explains that no one would be compelled to speak to Mr. McReynolds during his inspection. *Doc. 89* at 7. He also clarifies that Defendants' counsel will be present for the interviews, while his own counsel will not. *Doc. 95* at 1. Presumably in response to Defendants concerns as to foundational questions, Plaintiff submits an affidavit in which Mr. McReynolds sets out the questions that he intends to ask to establish a rapport with the interviewees. *Doc. 95*, Ex. 2. He proposes to ask, for example, how long the interviewees have worked for PNM Level VI and what type of training they have received. *Id.*

As to Defendants' concerns regarding the objectionable form of Mr. McReynolds proposed questions, Plaintiff maintains that there is no authority to suggest that his expert is subject to question-specific objections typical of

7

depositions conducted by counsel, as the proposed interviews are distinct from depositions and Mr. McReynolds is his designated expert, not his agent. *Doc. 95* at 2. Plaintiff also maintains that while *ex parte* communications between attorneys and represented parties are prohibited, the same cannot be said for communications between a plaintiff's expert and the defendants' employees and agents. *Doc. 89* at 9 (citing *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995) for the proposition that "[s]ince an expert witness is not subject to the control of the party opponent with respect to consultation and testimony he or she is hired to give, the expert witness cannot be deemed an agent"). Finally, Plaintiff suggests that it is Defendants' prerogative to conduct recorded, *ex parte* interviews of their own employees and inmates, or to obtain affidavits, if they wish. *Doc. 95* at 1.

      Given Plaintiff's clarifications of the manner and scope of Mr. McReynolds' interviews, the Court is satisfied that these interviews will not constitute *de facto* depositions or subvert the purpose of or protections provided in the Rules of Civil Procedure. The non-compulsory nature of the interviews and the presence of Defendants' counsel alleviate many of the concerns raised by Defendants. Further, the Court agrees with Plaintiff that an expert's interview questions are not subject to the same type of question-specific objections as depositions conducted by counsel. While Defendants may favor the use of formal depositions over interviews conducted by Plaintiff's expert, the Court finds the proposed interviews to be an acceptable method of gathering factual information to be used in forming and offering an expert opinion.

Defendants also raise a concern as to Mr. McReynolds' use of hearsay statements, arguing that witness interview statements constitute inadmissible hearsay evidence and that Mr. McReynolds should not be permitted to opine as to the culture of PNM-North on the basis of hearsay statements. *Doc. 93* at 8-9. Defendants submit that Plaintiff is "openly constructing a trial plan premised on making otherwise inadmissible statements and interview notes, admissible evidence through a retained expert's testimony." *Id.* Plaintiff, on the other hand, insists that Defendants have conflated discovery with admissibility at trial. The Court agrees.

As Plaintiff points out, under Federal Rule of Evidence 703, experts may rely upon hearsay statements in formulating their opinions, so long as it is reasonable to do so within their field of expertise. *See* Fed. R. Civ. P. 703 (providing that "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming and opinion on the subject, they need not be admissible for the opinion to be admitted.") While Rule 703 goes on to restrict disclosure of inadmissible facts to the jury to those instances where the facts' probative value substantially outweighs their prejudicial effect, this calculus only comes into play when an expert offers these inadmissible facts into evidence. *See id.* The same concerns are simply not applicable during the discovery phase.

Here, Mr. McReynolds' affidavit adequately establishes, at least for purposes of discovery, that the interview questions that he proposes to ask are the same kind of questions used by corrections experts in conducting cultural assessments. *See Doc. 95*, Ex. 2. Rather, as Mr. McReynolds also states, the

questions are the same kind of questions that he previously used when he performed various assessments at the direction of the NMDOC. *See id.* For these reasons, Defendants' hearsay-related objections to Mr. McReynolds' interviews are unfounded and, simply put, premature.

### B. Photographs of Clothing Issue Records

During his upcoming inspection, Mr. McReynolds also requests permission to photograph clothing issue records at PNM-North in order to compare the clothing issued with the clothing actually possessed by inmates in administrative segregation. *Doc. 89* at 9. Defendants object on the basis that the records are irrelevant or, alternatively, that the request should be properly served by Plaintiff in accordance with Federal Rule of Civil Procedure 34. *Doc 93* at 10.

First, as to relevance, Defendants contend that the laundry records have "no reasonable relation to any allegation in [Plaintiff's First Amended Complaint]." *Doc. 93* at 10-11. Plaintiff posits, however, that if more clothing items are reportedly issued to inmates than actually possessed, it would tend to make it more probable that Defendants were deliberately indifferent to Plaintiff's basic human needs, including clothing, at the time he was in administrative segregation at PNM-North. *Doc. 89* at 9.

In the Court's view, current clothing issue reports as compared to the clothing actually possessed by inmates in administrative segregation, while not paramount to Plaintiff's claims, are at least relevant. Further, photographing these reports during Mr. McReynolds' inspection is not particularly burdensome

10

for Defendants. As such, the Court will allow Mr. McReynolds to proceed with the photographs as requested.

Relevance aside, Defendants also ask the Court to require Plaintiff to formally request the clothing issue records in accordance with Rule 34. The Court will decline this request. First, a request for production would not accomplish what Mr. McReynolds seeks to accomplish here – that is, to determine contemporaneously whether clothing issue records match clothing actually possessed. Further, in the absence of any authority to the contrary, the Court remains unconvinced that photographs taken by an expert during the course of an inspection should count against the party's available discovery requests.

## IV. CONCLUSION

For all of these reasons, the Court concludes that the interviews requested by Plaintiff's expert witness comports with Federal Rule of Civil Procedure 26 in that it concerns nonprivileged matters relevant to Plaintiff's claims that are proportional to the needs of the case. Moreover, the Court finds that the proposed interviews do not constitute *de facto* depositions or improperly subvert the protections provided by the Federal Rules of Civil Procedure. Finally, the Court will allow Mr. McReynolds to photograph the clothing issue reports as requested and will not require Plaintiff's to submit a request for production for this purpose.

Wherefore,

11

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Regarding Request for Inspection (*Doc. 89*) is granted.

Dated this 19th day of May, 2016.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE